**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
—﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘**X**     Civil Action No:

DYLAN KAPIT,

               Plaintiff,     **COMPLAINT**

                                           **Jury Trial Demanded**

     v.

BARNARD COLLEGE

               Defendant.
—﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘﹘**X**

Plaintiff Plaintiff Kapit (hereinafter "Plaintiff" or "Plaintiff"), for their[1] Complaint against Defendant Barnard College (hereinafter "Defendant" or "Barnard") hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      Plaintiff, a former employee of Barnard College, brings claims under the Thirteenth Amendment of the US Constitution, the Fair Labor Standards Act, and New York Labor Law for unpaid wages, unpaid overtime, and independent-contractor misclassification alongside claims of discrimination and retaliation under the Americans with Disabilities Act and Amendments, Title IX of the Education Amendments of 1972, Titles VII and IX of the Civil Rights Act of 1964, and all correlating New York State and New York City laws as to retaliation, disability, sex, gender, and gender expression and identity. Plaintiff also brings breach of contract claims arising out of the same nucleus of operative fact underlying their discrimination claims.

## JURISDICTION AND VENUE

---

[1] Plaintiff is a transmasculine, non-binary person who uses they/them pronouns. Plaintiff has facial hair, a deeper voice register, and other masculine-identifying features associated with the presence of testosterone levels comparable to those of  persons assigned male at birth.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under numerous federal laws.

3.      This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Furthermore, Defendant Barnard College is located in this District and conducts business in this district.

## PARTIES

5.      Plaintiff is a transmasculine, non-binary, autistic person who uses they/them pronouns.

6.      Plaintiff graduated from Barnard College with a Bachelors of Arts Degree in May of 2016 with a GPA of 3.44 and went on to attain a Master's Degree in Special Education from Columbia University in May of 2020. Plaintiff is now pursuing a doctorate degree in Special Education at University of Pittsburgh.

7.      Upon Plaintiff's graduation from Columbia, Plaintiff was hired by Barnard first "as a Consultant" on LGBTQIA+ issues on or about July 13, 2021, and later, as a part-time employee with the title of LGBTQ+ Outreach Coordinator on or about February 2, 2022.

8.      Plaintiff was at all relevant times a Barnard College "Employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e et seq., Title IX of the

Education Amendments of 1972, 42 USC § 1681 et seq., the Americans With Disabilities Act of 1990 and Amendments, 42 USC §12101 et seq. and the Federal Labor Standards Act.

9.      Defendant Barnard College (hereinafter "Defendant") is a private college located at 3009 Broadway, New York, New York 10027, and is permitted to do business in New York.

10.     Defendant was at all relevant times Plaintiff's "Employer" within the meaning of the aforementioned and applicable statutes.

## ADMINISTRATIVE POSTURE

11.     On July 15, 2024, Plaintiff filed a Charge of Discrimination at Equal Employment Opportunity Commission ("EEOC").

12.     The EEOC issued a Notice of Right To Sue on January 13, 2025. Three-hundred days from January 13, 2025 is April 13, 2025. Thus this complaint is timely and has met all procedural and administrative prerequisites.

## STATEMENT OF FACTS

13.     For over a decade, Plaintiff worked tirelessly within the Barnard and Columbia communities to organize events and increase awareness and acceptance of transgender identities. Plaintiff's push to effectuate change at Barnard was in alignment with best practices for a storied, progressive institution of higher learning.

14.     Plaintiff was instrumental, for example, in forming the group, "Students for a Trans-Inclusive Barnard," that helped bring Barnard up to speed as the last of the "Seven Sisters" Colleges to admit transgender women applicants.[2]   Upon information and belief, key

---

[2] Barnard's policy on transgender admissions can be found here: https://barnard.edu/admissions/transgender-policy , last accessed April 11, 2025. Of particular interest, the "FAQs" section reads in relevant part, "Are trans men eligible for admission? No. Are individuals who identify as gender non-conforming or genderqueer eligible for admission? Barnard accepts applications from those who consistently live and identify as women. To be considered for admission, application

decision-makers in Barnard's administration were unhappy with Plaintiff's advocacy on behalf of transgender students, maintaining the outmoded outlook that transgender students don't belong in Barnard's single-sex ("female") education model (as of the date of filing no clear policy exists as to non-binary Barnard applicants).[3] The contentious nature of the push for updated gender policies is evinced in the language of the "FAQs" acknowledging the Admissions Board had to reconsider, citing "the Board's decision," without any transparency as to the process.

15.     Plaintiff launched the first Annual Pride Month at Barnard in April 2023, some of the most-widely attended student programming of the academic year.

16.     On January 24, 2024 Barnard College terminated Plaintiff, claiming Plaintiff had violated college policies.

17.     Plaintiff's termination was pretextual, retaliatory, and discriminatory. All of these factors, among others–particularly Barnard's failure to adequately address the Title IX claim Plaintiff initiated prior to Plaintiff being accused of any wrongdoing–created a hostile work environment.

**Plaintiff Complains to Barnard of Uncompensated Labor and Is Retaliated Against**

18.     As a result of Plaintiff's achievements while attending Barnard College as a student, and on account of Plaintiff's outstanding advocacy on behalf of the Columbia/Barnard LGBTQIA community at large, Barnard then-President, Sian Beilock, hired Plaintiff as a "Consultant" to work on Transgender Issues at Barnard. Plaintiff accepted the position.

---

materials should support this self-identification…What does this mean for Barnard's mission? Barnard's mission remains unchanged — to provide generations of promising, high-achieving young women with an outstanding liberal arts education in a community where women lead."
[3] LGBTQ+ outreach coordinator Dylan Kapit '16 (they/them) interviews Barnard student Katherine Nessel '23 (she/her) about her experience as a trans woman on campus, https://barnard.edu/news/barnard-recognizes-international-transgender-day-visibility, last accessed April 11, 2025.

19.    Plaintiff spent that summer of 2021 working closely with Holly Teder who at the time was chairing the Diversity, Equity, and Inclusion Council. At the end of the summer, Teder requested Plaintiff present on their findings after spending countless hours interviewing the various teams, departments, and divisions of the College as well as students and administrators regarding what issues were most urgently impacting the trans population at Barnard and how Defendant could better address those needs.

20.    Despite being labeled as an "Independent Contractor," Plaintiff was, on the facts, an employee.

21.    Barnard controlled Plaintiff's work schedule.

22.    Barnard had to be notified if Plaintiff was sick.

23.    Plaintiff had to report to Barnard's management in a manner consistent with being supervised as an employee.

24.    Barnard gave Plaintiff supervisory feedback.

25.    Plaintiff was required to attend mandatory meetings set by Barnard.

26.    Working for Barnard was Plaintiff's sole occupation outside of being a student.

27.    Plaintiff ultimately recommended Defendant hire an employee to spearhead necessary changes at Barnard and volunteered for the job should one be created. Holly Teder asked Plaintiff to write a job description and in January of 2022, Leslie Grinage reached out to Plaintiff to initiate the hiring process.

28.    Plaintiff applied and was offered the job of LGBTQ+ Outreach Coordinator by Defendant, albeit only part-time for a promised rate of $30/hour for 20 hours/week, however this rate was styled as a "salary."

29.    Plaintiff began work as LGBTQ+ Outreach Coordinator on February 1, 2022.

30.    Despite Defendant styling Plaintiff's pay as "salaried," Defendant required Plaintiff to maintain and submit time sheets typical of an hourly employee and was paid as an hourly employee in all respects but for overtime (over 40 hours/week) or even straight time worked over 20 hours/week.

31.    Upon information and belief, Barnard attempts to cloak part time, hourly work as "salaried" as a means to circumvent the payment of overtime or straight time over the employee's scheduled hours *despite not only being on notice that the employee was working additional hours but also requiring that employees work those extra hours*, as in Plaintiff's case. At no point did Plaintiff's contracted rate of pay exceed $1300 per week and Plaintiff is therefore not exempt.

32.    This scheme, albeit a common one, violates both FLSA and NYLL and has critical implications for workers. Plaintiff has given Defendant every opportunity to correct its misstep and Defendant has taken no action.

33.    It quickly became clear that Defendant's expectations were that Plaintiff execute deliverables entirely befitting a full-time employee position and that Defendant was resistant to advancing transgender rights and visibility on campus, including Plaintiff's own. Defendant  knew or should have known that the role was requiring Plaintiff to work for unpaid hours because Plaintiff regularly reported the work and complained that the required deliverables demanded full-time work.

34.    Repeatedly, Plaintiff's Supervisor, Catlin Michael, requested Plaintiff be at after-hours events and programming outside of Plaintiff's 20-hour prescribed workweek.

35.    In some instances, Plaintiff, working over 40 hours per week, should have been paid overtime and was not.

36.    For example, during the pay period of April 6, 2023 through April 20, 2023, coinciding with Defendant's Pride Month Programming, for which Plaintiff was largely responsible, Plaintiff was expected to work and did work as follows:

| DATE | SHIFT WORKED | REGULARLY SCHEDULED | ADDITIONAL | TOTAL HOURS |
|---|---|---|---|---|
| Thursday 4/6 | 9:30am-10pm | 0 | 12 | 12 |
| Friday 4/7 | 9am-1pm | 4 | 0 | 4 |
| Monday 4/10 | 9am-6pm | 0 | 9 | 9 |
| Tuesday 4/11 | 9am-5pm | 8 | 0 | 8 |
| Wednesday 4/12 | 9am-5pm | 8 | 0 | 8 |
| Thursday 4/13 | n/a | 0 | 0 | 0 |
| Friday 4/14 | 9am-1pm | 4 | 0 | 4 |
| Monday 4/17 | n/a | 0 | 0 | 0 |
| Tuesday 4/18 | 9am-5pm | 8 | 0 | 8 |
| Wednesday 4/19 | 9am-8pm | 8 | 3 | 11 |
| TOTAL HOURS THIS PAY PERIOD | | | TOTAL HOURS **WORKED** THIS PAY PERIOD: | 64 hours |
| | | | TOTAL HOURS **COMPENSATED** THIS PAY PERIOD: | 40 hours |
| | | | **UNCOMPENSATED :** | **24 hours** |

37.    The above example shows that Plaintiff is owed 24 hours of overtime pay which should be calculated at time and half. Plaintiff's straight wage rate was $30/hr., time and half

would be $45/hr., multiplied by 24 hours (in the example above), is a minimum of $1,080. Weeks like this occurred at least 8-10 times per year.[4]

### Plaintiff Is Demoted On Account Of Their Transgender Status, On Account of Advocating Against Gender-Discriminatory Policies And Practices On Campus, And On Account Of Complaining About Unpaid Labor

38.    Eventually, in September 2022, on account of Defendant's discriminatory policies and practices toward transmasculine and nonbinary people, including Plaintiff, Plaintiff's official title was changed from "LGBTQ+ Outreach Coordinator" to "Program Coordinator."

39.    This change was an ad hoc demotion: Plaintiff's reporting structure changed, no longer reporting under Leslie Grinage, and Plaintiff was given more and different duties to be performed in the same number of hours (20 hours/week).

40.    Upon information and belief, the change in title and reporting structure was an effort to curtail Plaintiff's spearheading of transgender visibility on campus and to curtail Plaintiff's advocacy for better, more inclusive policies, and ultimately resulted in Plaintiff being required to do more and different work in the same amount of time, unlike non-transgender, non-disabled comparators like Art and Theater Director, A. Doe, or like Orientation, Programs and Clubs Coordinator, L. Doe.[5]

41.    Plaintiff persistently and repeatedly requested adequate compensation from Defendant and was ignored.

42.    Plaintiff was already working close to 30 hours per week most weeks and was not being paid for hours worked above 20. The ad hoc demotion required more and different duties, throughout the 2022-2023 academic year.

---

[4] Plaintiff seeks an accounting and that Barnard turn over records as to timekeeping, which it was Barnard's duty to keep.
[5] Plaintiff can provide names directly to Defendant upon request, they are omitted here to protect privacy.

43.     After Plaintiff reported to their direct supervisor, Catlin Michael, that the additional duties required at least between 30-40 hours per week, Plaintiff repeatedly added discussion of proper compensation to the weekly meeting agenda, showing Defendant was on notice of the hours worked and issues arising therefrom. Plaintiff was ignored and yet was expected to keep working without being properly paid.

**Plaintiff Complains To Defendant of Disparate Treatment Based On Plaintiff's Own Sex And Gender Expression And Is Retaliated Against For Objecting Not Only To Defendant's Treatment of Plaintiff, But Also To Defendant's Discriminatory Sex And Gender Policies And Practices More Broadly**

44.     Plaintiff was, upon information and belief, as a result of Defendant's discriminatory patterns and practices, the only public-facing transmasculine person or visibly trans person hired by Defendant (ie, the only person assigned female at birth but not presenting as visibly female). Upon objecting to Defendant's discriminatory policies and practices–protected activity–Plaintiff was further targeted, ie, retaliated against.

45.     On January 24, April 13, and April 25, 2023, Plaintiff reached out to Defendant's Human Resources representative, Evelyn Dishaw, regarding Calin Michael's disparate treatment of Plaintiff. Barnard did not take any meaningful action to address Plaintiff's complaint, contributing to a hostile work environment.

**Plaintiff's Title IX Complaint Is Not Taken Seriously And Is Not Properly Addressed Because Plaintiff Is A Transmasculine Nonbinary Person[6] And When A Complaint Is Lodged Against Plaintiff, It Is Treated Drastically More Seriously Despite Conspicuously More Innocuous Facts**

46.     In the spring of 2023, Plaintiff reported to Elizabeth Scott-Francis, Executive Director, Outreach & Response and Title IX Coordinator, that fellow Barnard Employee, M.P.,

---

[6] Ie, because Plaintiff's gender is inconsistent with that assigned at birth  and because Plaintiff is not a woman

upon information and belief, a cis[7] gay man working in the Alumni Relations Office, was sexually harassing Plaintiff by continually asking Plaintiff out on dates, calling Plaintiff "sexy," and trying to convince Plaintiff to go out with M.P. even though Plaintiff repeatedly stated that Plaintiff does not date people with whom Plaintiff works.

47.    Elizabeth Scott-Francis never interviewed Plaintiff about their experience and upon information and belief, no appropriate Title IX investigation was completed on account of Plaintiff's gender expression. In fact, when Plaintiff offered to produce screen shots of the advances which were made upon Plaintiff, Elizabeth Scott-Francis dismissed the offer and asked no follow up questions.

48.    This is patently different treatment than that extended to the feminine-presenting person whom an anonymous third party alleges Plaintiff to have harassed ("K.") by way of a limited-view, closed-audience instagram post. K. makes an excellent comparator in this case because even though that person did not report like Plaintiff did and upon information and belief was not even aware of any allegedly amorous Instagram post until Barnard initiated its bogus and disproportionately alarmist investigation.

49.    Upon information and belief, no investigation of Plaintiff complaint was done in Spring 2023 because Plaintiff is a transmasculine person and was thus seen as an unsympathetic complainant at Defendant, a college that does not admit men, transmasculine people, or nonbinary people–a policy that in practice carries over into Barnard's workplace culture.

50.    On account of Plaintiff's gender identity and expression, and on account of Plaintiff's refusal to uphold Defendant's practices that disparately impacted transgender and gender variant people, Plaintiff's Title IX claim was not taken seriously, creating a hostile work environment and constituting retaliation.

---

[7] lives and presents as a man, consistent with gender assigned at birth (ie, not transgender)

**Plaintiff Was Treated Differently And Worse On Account of Plaintiff's Disability, And Plaintiff's Disability Was Not Considered In Defendant's Shoddy "Investigation" And Outcome Decision**

51.     Plaintiff's complaint was also not properly investigated, upon information and belief, because Plaintiff has Autism, and was perceived as socially awkward and unsympathetic, violating the Americans with Disabilities Act.

52.     Plaintiff was, throughout their employment at Defendant, treated differently and worse on account of having Autism Spectrum Disorder. Defendant was fully on notice of Plaintiff's disability.

53.     Plaintiff was also vociferously involved in disability advocacy on campus and it can reasonably be inferred that Plaintiff was retaliated against for their advocacy on behalf of themself and other people with disabilities on campus since Barnard views even constructive criticism as threatening to its brand.

54.     Ignoring Plaintiff's complaints on account of Plaintiff's membership in protected classes created a hostile work environment for Plaintiff and ultimately led to Plaintiff's pretextual and retaliatory firing.

**Plaintiff Was Not Afforded Proper Title IX Procedural Safeguards When Plaintiff Was Accused Second-Hand of Contravening Defendant Policy And Was Not Afforded Such On Account Of Plaintiff's Sex, Gender, and Disability**

55.     September 5, 2023 was K.'s first scheduled day of work at Defendant. Plaintiff and K. have had, upon information and belief, one brief conversation on the "gchat" platform, and exchanged two introductory text messages. These exchanges were befitting two new colleagues and no advances were made on either side.

56.    K. and Plaintiff have never met in person and have been in a single Zoom meeting held on September 6, 2023.

57.    On September 7, 2023, Plaintiff was ordered to not have contact with K., and Plaintiff complied, perplexed.

58.    This interaction provides a stark comparator case to that of the Title IX Claim Plaintiff attempted to initiate against M.P.  and which resulted in no meaningful, comparable follow up.

59.    According to Title IX 2020 Rules and Regulations, which were in effect at the time of the operative "investigation" of the Title IX allegation against Plaintiff, Plaintiff was entitled to a live hearing, and was entitled to inspect the record of that hearing.

60.    Plaintiff was not provided a live hearing.

61.    Under the same regulations, Plaintiff was entitled, by way of an advisor, in this instance, their attorney,  to cross-examine the person making the complaint against them.

62.    Plaintiff was not afforded any such opportunity.

63.    Under the same regulations, the Investigator should have provided Plaintiff with the opportunity to review all evidence that was gathered relating to the accusation and also should have provided a copy of the investigative report to Plaintiff at least ten days prior to the live hearing.

64.    Defendant failed to meet these requirements in the instant case and has to date provided Plaintiff neither.

65.    Under the same regulations, the investigator in the matter against Plaintiff should not have been the same individual to make the determinative finding of whether a Title IX violation had in fact occurred. In this case, the investigator was Danielle Hope Cabral who not

only reported at the time directly to Defendant's Nondiscrimination Officer, Elizabeth Scott-Francis, but whose investigation was not independent of Elizabeth Scott Francis's initial work on the matter.

66.     Furthermore, it was Elizabeth Scott-Francis who both made the resulting determinative finding in this matter and who initially discriminated against Plaintiff and retaliated against Plaintiff, curtailing Plaintiff's access to a full and fair hearing.

67.     Elizabeth Scott-Francis, attempted to circumvent Plaintiff's Counsel in an effort to prevent Plaintiff from availing themself of their full and fair procedural rights by forcing Plaintiff to correspond directly with her despite Defendant being aware Plaintiff was actively represented by Counsel.

68.     When Plaintiff's counsel directly corresponded with Ms. Scott-Francis regarding the time allotted for filing an appeal and the need for a week extension as the attorney was newly retained, Ms. Scott-Francis presented no issue as to Counsel's request for additional filing time, however, Ms. Scott Francis asked that Plaintiff email her directly.

69.     Plaintiff complied and only then did Ms. Scott Francis indicate that a one-week extension would, in fact, not be provided. She then demanded the requisite appeal be submitted by the end of the day, depriving Plaintiff of due process rights under Title IX.

70.     No reason has been proffered for this gamesmanship, and it can reasonably be concluded that this was an effort to curtail Plaintiff's Counsel's opportunity to craft a meaningful appeal on Plaintiff's behalf, further evincing the hostile work environment Plaintiff faced during their employment and further evincing Defendant's discriminatory policies and practices.

71.     Defendant's denial of a one-week extension for Plaintiff's Counsel to file the appeal and requiring that the appeal be submitted "by end of day," came after Plaintiff spent

months on administrative leave with no updates from the College as to any progress in this matter, indicating the demand by Ms. Scott-Francis was merely a continuation of the discriminatory, dismissive, and hostile treatment of Plaintiff for all of the reasons heretofore outlined.

72.     Additionally, the Appeal corrected factual inaccuracies contained in the initial decision letter regarding the privacy settings of Plaintiff's Instagram "stories," which were at issue. Those factual corrections were patently, willfully ignored, upon information and belief as a means of retaliation for Plaintiff advocating both for themselves and for other transgender and disabled members of Defendant's community, namely students that Defendant and its employs had a duty to treat with respect and in accordance with existent federal and state and city human and civil rights protections.

## CAUSES OF ACTION

### First Cause of Action
### Unpaid Labor under US Const. XIII

73.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

74.     Plaintiff worked the foregoing hours.

75.     Defendant knew the Plaintiff worked the foregoing hours and encouraged Plaintiff to do so. Plaintiff was not paid for the hours worked.

76.     Plaintiff complained to Defendant that Plaintiff was not compensated for their labor.

77.     As a result of the protected activity of complaining about unpaid wages, Defendant retaliated against Plaintiff as part of an ongoing pattern and practice of hostility

toward Plaintiff on account of, inter alia, Plaintiff's protected activity of complaining of unpaid wages.

## Second Cause of Action
### Violation of FLSA, Unpaid Wages

78.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

79.    Plaintiff worked the foregoing hours.

80.    Defendant knew the Plaintiff worked the foregoing hours and encouraged Plaintiff to do so. Plaintiff was not paid for the hours worked.

81.    Plaintiff complained to Defendant that Plaintiff was not compensated for their labor.

## Third Cause of Action
### Violation of FLSA, Misclassification

82.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

83.    Plaintiff worked the foregoing hours and was factually an hourly worker. Merely styling Plaintiff's pay as a "salary" does not make it so, as Plaintiff had to, inter alia, submit timesheets recording their hours, and request hourly time off which had to be approved by a supervisor.

84.    Defendant knew the Plaintiff worked the foregoing hours and encouraged Plaintiff to do so.

85.    Plaintiff was not paid for the hours worked.

86.     In some cases, Plaintiff worked over 40 hours per week and accordingly, those hours should have been paid at the statutory overtime rate, however, Defendant attempts to hide behind the classification of Plaintiff's hourly wage as a "salary" to circumvent the applicable wage laws.

87.     Plaintiff complained to Defendant repeatedly and suffered pecuniary loss and emotional distress as a result.

**Fourth Cause of Action**
**Violation of FLSA, Unpaid Overtime**

88.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

89.     The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

90.     Defendant suffered and permitted Plaintiff to routinely work more than forty (40) hours in a workweek without overtime compensation.

91.     Defendant's actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff their required overtime compensation.

92.     As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages. Plaintiff is entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

93.     By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff, Defendant has failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of

employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

94.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendant knew or showed reckless disregard for the fact that its compensation practices were in violation of these laws.

### Fifth Cause of Action
### Violation of FLSA, Retaliation

95.    The FLSA, 29 U.S.C. § 215 *et seq*. Prohibits retaliation against an employee for complaining of FLSA or wage-related violations.

96.    Defendant's actions, policies, and practices described above violate the FLSA's anti-retaliation provision by ad hoc demoting Plaintiff, increasing Plaintiff's workload, and failing to investigate properly an alleged internal complaint against Plaintiff.

97.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages. Plaintiff is entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

98.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendant knew or showed reckless disregard for the fact that its compensation and retaliation practices were in violation of these laws.

### Sixth Cause of Action
### Violation of NYLL, Unpaid Wages

99.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

100.    New York Labor Law § 190 *et seq*. prohibits failing to pay an employee wages due for hours worked.

101.    Defendant's actions, policies, and practices described above violate the NYLL's

wage provisions by failing to pay Plaintiff for hours worked, of which Defendant knew or had reason to know.

102.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages. Plaintiff is entitled to liquidated damages, including prejudgment interest, and attorneys' fees and costs incurred in connection with this claim.

103.    The foregoing conduct, as alleged, constitutes a willful violation of the NYLL within the meaning of § 190. Defendant knew or showed reckless disregard for the  fact that its compensation and retaliation practices were in violation of these laws.

<u>**Seventh Cause of Action**</u>
**Violation of NYLL, Unpaid Overtime**

104.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

105.    The NYLL § 190 *et seq.*, requires employers to pay non-exempt employees  one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

106.    Defendant suffered and permitted Plaintiff to routinely work more than forty (40) hours in a workweek without overtime compensation.

107.    Defendant's actions, policies, and practices described above violate the NYLL's overtime requirement by regularly and repeatedly failing to compensate Plaintiff their required overtime compensation.

108.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages. Plaintiff is entitled to liquidated damages, prejudgment interest, and attorneys' fees and costs incurred in connection

with this claim.

109.    By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff, Defendant has failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the law.

110.    The foregoing conduct, as alleged, constitutes a willful violation of the NYLL. Defendant knew or showed reckless disregard for the  fact that its compensation practices were in violation of these laws.

**Eighth Cause of Action**
**Violation of NYLL, Retaliation**

111.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

112.    The NYLL, § 215 *et seq.* Prohibits retaliation against an employee for complaining of FLSA or wage-related violations.

113.    Defendant's actions, policies, and practices described above violate the FLSA's anti-retaliation provision by ad hoc demoting Plaintiff, increasing Plaintiff's workload, and failing to investigate properly an alleged internal complaint against Plaintiff.

114.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages. Plaintiff is entitled to liquidated damages, prejudgment interest, and attorneys' fees and costs incurred in connection with this claim.

115.    The foregoing conduct, as alleged, constitutes a willful violation of the NYLL within the meaning of § 215. Defendant knew or showed reckless disregard for the  fact that its

compensation and retaliation practices were in violation of these laws.

## Ninth Cause of Action
### Breach of Contract

116.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

117.    Based on the foregoing alleged facts and circumstances, Defendant Barnard breached express and implied agreements with Plaintiff.

118.    As a direct and foreseeable consequence of the breaches, Plaintiff suffered damages including without limitation, emotional distress, loss of opportunities, economic injuries and other direct or consequential damages.

119.    Plaintiff is entitled to recover damages for Defendant Barnard's breach of the express and/or implied contractual obligations.

120.    As a direct and proximate result of the above conduct, actions, and inactions, Plaintiff has suffered psychological, emotional, and reputational damages, and economic injuries. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, and attorneys' fees and costs.

121.    By making Plaintiff *persona non grata* from their alma mater twice over, Defendant Barnard has unduly deprived Plaintiff of the benefit of the bargain of a Barnard diploma which can reasonably be understood and is promoted by Defendant to include and upon which Plaintiff relied on to include, the post-graduation events, connections, and opportunities that come with a Barnard degree and that take place upon the Barnard and Columbia campuses. Plaintiff relied, to their detriment, on the express and implied promises of Barnard.

122.    Based on the foregoing, Plaintiff requests, in addition to damages, the equitable remedy of removing *persona non grata* status and allowing Plaintiff the full benefit of their bargain in agreeing to purchase a Barnard education, including participation in campus events.

## Tenth Cause of Action
### Violation of Title IX of the Education Amendments of 1972 (20 U.S.C. 1681(a))

123.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

124.    Title IX of the Education Amendments of 1972 provides, in relevant part, that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

125.    Upon information and belief, Barnard College receives in excess of 2 million USD in Federal financial assistance.

126.    Title IX provides for a private right of action for an employee of a federally funded education program or activity who alleges sex-based discrimination.

127.    Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to adopt and publish grievance procedures and must not only ensure the rights of the complainant but also accord due process to both parties.

128.    Based on the foregoing, Defendant Barnard College failed to accord Plaintiff, on the basis of their sex, Plaintiff's right to due process and equal protection by, *inter alia*, failing to provide Plaintiff a live hearing, the opportunity for cross-examination, the record of the investigative file, a separate decision-maker from investigator, and full and fair access to an attorney.

129.    Based on the foregoing, Defendant then imposed sanctions on Plaintiff entirely disproportionate to the severity of the allegations, which were allegedly made anonymously by a third party, with no safeguard against fraud or testimony as to any harm actually done by any alleged instagram post.

130.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages. Plaintiff is entitled to liquidated damages, prejudgment interest, and attorneys' fees and costs incurred in connection with this claim.

### Eleventh Cause of Action
**Retaliation, Hostile Work Environment, and Adverse Action Discrimination
Motivated by Disability
In Violation of the Americans With Disabilities Act and Amendments ("ADAA")**

131.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

132.    The ADAA makes it unlawful to discriminate against an employee on account of the employee having or being perceived to have a disability, including Autism Spectrum Disorder.

133.    Barnard was aware of Plaintiff's disability.

134    Plaintiff sought accommodations for their disability.

135.    Barnard failed to accommodate Plaintiff's disability.

136.    In the instant case, Plaintiff had a disability, and was treated differently and less well on account of that disability and Barnard failed to consider Plaintiff's disability during the course of investigating and adjudicating a spurious Title IX allegation made against Plaintiff.

137.    Upon information and belief, Defendant was eager for a reason to terminate Plaintiff, who was a well-known, public advocate for the rights of transgender, transmasculine, and disabled people on campus and who engaged regularly in protected activity.

138.    Ultimately, on account of Plaintiff's complaints of discrimination and on account of Plaintiff's advocacy on behalf of disabled students (protected activity), Barnard failed to properly investigate both the Title IX complaint lodged by, and the complaint lodged against, Plaintiff, electing in the latter instance to terminate Plaintiff.

### Twelfth Cause of Action
**Adverse Action Discrimination and Hostile Work Environment Based On Sex and Gender, in Violation of 42 U.S.C. § 2000e-1 et seq**

139.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

140.    Plaintiff suffered harm to the conditions of their employment on account of their sex and gender, namely on the basis of being a transmasculine, non-binary person.

207.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to mental anguish and emotional distress, for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

208.    Because Defendant's unlawful actions were malicious and reckless, Plaintiff is entitled to an award of punitive damages.

### Thirteenth Cause of Action
**Retaliation in Violation of 42 U.S.C. § 2000e-1 et. seq.**

209.    Defendant retaliated against Plaintiff by, *inter alia*, failing to properly investigate both the Title IX complaint lodged by, and the complaint lodged against, Plaintiff, electing in the latter instance to terminate Plaintiff for being an advocate for a gender-diverse admission policy

and other modifications to Barnard's culture to increase the presence, safety, and wellbeing of transgender students, faculty, and staff on campus.

210.    Defendants retaliated against Plaintiff further by disproportionately sanctioning Plaintiff on account of being a transmasculine, non-binary, Autistic person who engaged in protected activity.

211.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to mental anguish and emotional distress, for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

212.    Because Defendant's unlawful and discriminatory actions constitute malicious, willful, and wanton violations, Plaintiff is entitled to punitive damages.

### Fourteenth Cause of Action
**Hostile Work Environment Motivated By Sex, Gender, and Disability in Violation of N.Y.C. Admin. Code § 8-107, et seq. ("NYCHRL")**

213.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

214.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of their sex and gender in violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107, et seq. ("NYCHRL"), by treating them differently from and less favorably than similarly situated employees who were not perceived to be transmasculine or non-binary.

215.    Defendant discriminated against Plaintiff by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy the hostile work environment by failing to

properly investigate both the Title IX complaint lodged by, and the complaint lodged against, Plaintiff, electing in the latter instance to terminate Plaintiff for being an advocate for a gender-diverse admission policy and other modifications to Barnard's culture to increase the presence, safety, and wellbeing of transgender students, faculty, and staff on campus.

216.    Defendants retaliated against Plaintiff further by disproportionately sanctioning Plaintiff on account of being a transmasculine, non-binary, Autistic person.

217.    Under the circumstances as alleged, any reasonable transmasculine, nonbinary person would have experienced the working conditions at Defendant to be intolerable.

218.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

219.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**Fifteenth Cause of Action**
**Adverse Action Discrimination Based On Sex, Gender, and Disability in Violation of N.Y.C. Admin. Code § 8-107, et seq. ("NYCHRL")**

220.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

221.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of their sex, gender, and disability in violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107, et seq. ("NYCHRL"), by treating her differently from and less favorably than similarly situated

employees who were not perceived to be transgender, transmasculine, non-binary, and/or disabled.

222.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

223.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**Sixteenth Cause of Action**
**Retaliation in Violation of NYCHRL**

224.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

225.    Defendant retaliated against Plaintiff for engaging in protected activity by pretextually firing Plaintiff on account of Plaintiff's engaging in protected activity.

226.    Defendant's actions as described herein constitute retaliation as defined in NYCHRL and Plaintiff is entitled to damages.

**Seventeenth Cause of Action**
**Adverse Action Discrimination based on Sex and Gender in Violation of New York Executive Law § 290 et seq. ("NYSHRL")**

227.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

228.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of their sex and gender in violation of the NYSHRL by treating Plaintiff

differently from and less favorably than similarly situated employees who were not perceived to be transmasculine or non-binary.

229. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm, including but not limited to mental anguish and emotional distress, for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

**Eighteenth Cause of Action**
**Retaliation in Violation of New York Executive Law § 290 et seq. ("NYSHRL")**

230. Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

231. Defendant retaliated against Plaintiff in violation of New York State Human Rights Law (New York State Executive Law, Art. 15 § 290 *et seq.*) by firing them for advocating on behalf of transgender, gender non-conforming, and disabled Barnard Community members including making Barnard's admissions policy trans-inclusive, and for requesting that an investigation be commenced into Plaintiff's allegations.

232. Defendant's actions as described herein constitute adverse employment actions and retaliation as defined in NYSHRL.

**Nineteenth Cause of Action**
**Hostile Work Environment Motivated by Sex and Gender in Violation of 42 U.S.C. § 2000e-1 et seq**

233. Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

234. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to mental anguish and emotional distress, for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

235. Because Defendant's unlawful actions were malicious and reckless, Plaintiff is entitled to an award of punitive damages.

## Twentieth Cause of Action
### Hostile Work Environment Motivated By Sex and Gender in Violation of New York Executive Law § 290 et seq. ("NYSHRL")

236. Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

237. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of their sex and gender identity.

238. Furthermore, Defendant created a hostile work environment by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy the hostile work environment.

239. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm, including but not limited to mental anguish and emotional distress, for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in their favor and against Defendant for the following relief:

A) declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate US Federal Law, New York State Law, and New York City Law;

B) An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C) An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D) An award of punitive damages in an amount to be determined at trial;

E) An award of liquidated damages in an amount to be determined at trial;

F) Prejudgment interest on all amounts due;

G) An award of Plaintiff's reasonable attorneys fees and costs; and

H) Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a jury trial on all issues of fact and damages stated herein.

Dated: April 11, 2025
New York, New York

Respectfully submitted,

**RIVA LAW PLLC, Attorney for Plaintiff**

By: *//Desiree "Des" Salomone//*

Desiree "Des" Salomone, Esq.
des@rivalaw.us
845-481-3424